712

PACIFIC SPRUCE CORPORATION v.
CITY AND COUNTY OF SAN
FRANCISCO, CAL.

No. 7185.

Circuit Court of Appeals, Ninth Circuit.

Aug. 31, 1934.

Sawyer & Cluff and Webster F. Street, all of San Francisco, Cal., for appellant.

John J. O'Toole, City Atty., and Walter A. Dold, Chief Deputy City Atty., both of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

On the afternoon of December 5, 1929, while appellant's vessel, the Robert Johnson (a four-masted steam schooner, length 251 feet, beam 43 feet), was passing under the drawbridge maintained by the city and county of San Francisco across Islais Creek Channel at Third street in said city and county, the foremast of the boat collided with the overhanging leaf of the drawbridge, the bridge being open at the time, resulting in damages to the vessel and giving rise to this suit in admiralty. This appeal is from a decree dismissing a libel in personam brought by appellant to recover from appellee, the city and county of San Francisco, the amount of damages sustained by the vessel.

At the time of the collision, the vessel was proceeding stern foremost, under her own power and helm but assisted by a tug at the stern, traveling in an easterly direction toward San Francisco Bay. The boat was being backed out of the channel because there was not enough room to turn her around. Two tugs had been ordered to assist the Robert Johnson, but the one at the bow, which was to be used, no doubt, for the purpose of keeping her straight in the channel, was not made fast, which fact the mate neglected to make known to the captain.

About halfway through the drawbridge, the bow of the vessel swung to the northward and its starboard bow passed over a place in the waters of the channel, near the northwest corner of the bridge, where a dolphin, or group of piles, acting as a fender to protect the bridge, had been at one time, but was not in place at the time in question, having been removed about two weeks theretofore. In passing near the abutment of the bridge on the north side, from which side the bridge raises, and in passing over the place from which the dolphin had been removed, as indicated, the foremast and boom of the vessel struck the overhanging leaf of the bridge, which, when open as high as its construction will permit, overhangs the channel at an angle of about 17°, or approximately 30 feet, according to the record.

The libel alleged that the bridge as maintained obstructs the safe passage of vessels to the extent of the overhang of the bridge when open, and the trial court so found, but found also that the overhang of the bridge is not a menace to vessels care-

fully and properly navigated. Likewise, the court found that the absence of a dolphin at the place in question constituted negligence on the part of appellee, "but the collision would not have occurred had the vessel been properly navigated and operated," and "that said drawbridge was safe without any dolphins for any vessel being operated and navigated in a careful and prudent manner." The court concluded as a matter of law that any negligence on the part of appellee was but slight as compared with the negligence of the navigator of the Robert Johnson; that his negligence, in navigating the channel at that place with but one tug, was gross and was the proximate cause of the collision. The libel was therefore dismissed.

While admitting its negligence in navigating the channel without a tug at the bow to keep the vessel straight while passing under the bridge, appellant contends, nevertheless, that the rule of divided fault should be applied and a decree for divided damages entered, because, it is argued, "The physical facts themselves establish beyond the peradventure of a doubt that appellee's negligence contributed to the collision." Appellee contends that any negligence on its part "lay in not replacing the dolphin which had been removed," that "such negligence, if it can be construed as negligence at all, was of the most trivial, minor and insignificant nature," and that "the proximate cause of the accident was the gross negligence of the master of the 'Robert Johnson.'"

In our opinion, the record amply sustains the finding that the proximate cause of the collision was the gross negligence of the master of the Robert Johnson in navigating with but one tug. At the time in question, the boat was empty and riding high in the water. The weather was clear and mild and there was practically no wind. The vessel had proceeded four or five hundred feet and was about halfway through the drawbridge when her bow drifted to the north bringing her close to the abutment of the bridge and causing her mast to collide with the overhanging leaf. The master of the Robert Johnson thought that both tugs had been made fast, his mate having neglected to inform him that the one at the bow had not been secured. The testimony discloses that under the circumstances the attempt to pass under the bridge without a tug at the bow to keep the vessel straight was highly dangerous, and that the collision could not or would not have occurred if a tug had been secured at the bow. A licensed master and pilot so testified, as follows:

"Q. Captain, what is the effect when a boat such as the Robert Johnson is affixed to a tug traveling stern first? A. The only reason for tug boats being on the bow of a vessel that is being towed stern first by another towboat, is to control the movement of the boat, of the vessel being towed, inasmuch as the vessel is absolutely out of control herself, when towed alone by a towboat stern first.

"Q. Now, if the engines of the boat are operating, does that make any difference? A. It is impossible to control the position of the ship by engines when being towed stern first through the water by a towboat.

"Q. Does it make any difference if the master of the vessel is depending on the fact that the bow of the boat is attached to a tug? A. All the difference in the world.

"Q. In what way? A. If the master of a vessel being towed stern first by a towboat, is of the opinion that he has another towboat on the bow of his ship to steady her up,—if the bow falls off either to the right or the left, he has complete control of his own vessel; if the vessel's bow falls off to the right and he wishes to hold her up he indicates that to the towboat on the bow, and that towboat will then go ahead and pull the bow of the vessel being towed up against the angle from which it was falling. In the event that the towboat that is supposed to be fastened to the bow fails to perform its duty then it is physically impossible for the master of the ship to keep the bow of his vessel from falling either to the right or the left, as the case may be. There is nothing that he can do to control the movement of the bow of his ship."

Another sea captain testified to the same effect, as follows:

"Q. Now, if you had no tug at the bow and you were traveling in an easterly direction going out of Islais Creek Harbor, what effect would it have on the boat you were on? A. The shipmaster would at times have absolutely no control over the ship, because it is dead water there, and then if the ship goes down you cannot use the rudder. She won't answer the rudder.

"Q. If she is dependent upon a tug being at the bow, and there wasn't any at the bow, would that make any difference? A. Most decidedly, sir. He would have absolutely no control over that ship, whatsoever. You have got to have a boat under headway or sternway in order to guide her. When

she is threatening to go to the port or starboard you have got to tell the captain of the tug to assist, from the bridge. It is absolutely up to the master of the ship."

It is apparent therefore that the finding of the court, that the master of appellant's vessel was guilty of gross negligence, is amply supported by the record, and for that reason the court did not err in dismissing the libel.

■ Nor did the court err in refusing to apportion the damages. To do so would have required a finding that the negligence of appellant, in failing to have the dolphin in place, contributed materially to the collision, and we do not believe that the record would support such a finding. There is testimony to the effect that the purpose of the dolphin is to protect the bridge. There is also testimony tending to prove that had the dolphin been in place it would have deflected the course of the vessel and prevented the collision, but there is likewise testimony tending to prove that the presence of the dolphin would not have prevented the collision. The burden was on the libelant to prove the affirmative of that issue. As said in The Athabasca (D. C.) 45 F. 651, 655: "It being established that the negligence of the libelant was the inducing cause of the collision and loss, the charge of accessory negligence on the part of the respondent as the foundation for compelling it to share the damages must be clearly made out. [Citing cases.]"·

See, also, The City of New York, 147 U. S. 72, 85, 13 S. Ct. 211, 37 L. Ed. 84; The Oregon, 158 U. S. 186, 204, 15 S. Ct. 804, 39 L. Ed. 943; The Victory (The Plymothian), 168 U. S. 410, 423, 18 S. Ct. 149, 42 L. Ed. 519.

It is also contended that appellee should be charged with contributory negligence and the damages apportioned, because the overhanging leaf of the bridge is a menace and obstruction to navigation. That this contention is without merit is demonstrated by the testimony of the master of the Robert Johnson, who stated that he had taken her out of the channel about fifty times with two tugs and about ten times with one tug. It is difficult to see how he could have successfully navigated the channel on those occasions if the bridge is in fact an obstruction to navigation. The fact that he may have navigated successfully with but one tug on prior occasions does not prove that it was not gross negligence to do so. Under the circumstances, we believe that the court correctly found that the collision "would not have occurred had the vessel been properly navigated and operated," and that the "drawbridge was safe without any dolphins for any vessel being operated and navigated in a careful and prudent manner," and we see no reason for applying the rule of divided fault.

■ Appellant further contends that the drawbridge in question is an "unlawful obstruction to navigation" because it was built without the permission of the Secretary of War, as required by the Act of March 3, 1899, § 9, 30 Stat. 1151 (33 USCA § 401), prohibiting the erection of bridges over navigable waters of the United States without the consent of Congress and the approval of the plans by the Chief of Engineers and the Secretary of War; that, therefore, the construction and maintenance of the bridge "constituted a violation of a statutory obligation"; and, accordingly, that the burden was upon appellee to prove "that its negligence in the premises did not contribute to the collision," which it has failed to do.

The court found that the bridge is constructed over navigable waters and that no permit for its construction was obtained from the Secretary of War. The bridge was constructed pursuant to authority conferred by ordinances of the city and county, and appellee contends that no authorization from the Secretary of War was necessary.

Assuming, without deciding, that the bridge is an unlawful obstruction because no permit for its construction was obtained, we fail to see how that fact helps the cause of appellant, because, undoubtedly, the unlawful structure complained of must be an obstruction in fact, and, as we have seen, the bridge is not such an obstruction, that is, it is not an obstruction to vessels properly navigated.

The decisions of the Supreme Court and of this court have adhered to the admiralty doctrine of an equal division of damages in case of a collision between two vessels when both are at fault, contributing to the collision. Belden v. Chase, 150 U. S. 674, 691, 14 S. Ct. 264, 37 L. Ed. 1218; Puget Sound Nav. Co. v. Nelson (C. C. A.) 41 F.(2d) 356, 357; The Marian (C. C. A.) 66 F.(2d) 354, 357.

Those decisions, however, do not control here, for two reasons:

1. Because the appellant's negligence was the proximate cause of the accident.

2. Because the appellee's negligence, if any, did not contribute to the accident.

Affirmed.