## CITY AND COUNTY OF SAN FRANCISCO v. UNITED STATES.
### No. 27276.

United States District Court
N. D. California, S. D.
Oct. 19, 1948.

314

John J. O'Toole and H. J. Riordan, both of San Francisco, Cal., for plaintiff.

Keith Ferguson, Sp. Asst. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for defendant.

METZGER, Chief Judge.

On June 11, 1945, at the hour of approximately 6:30 A. M., the Army Steam Tug L. T. 240, formerly the Crowley "Sea Lion," length 141 feet, beam 29.8 feet, depth 15.6 feet, gross tonnage 473, operated by Charles E. Bried, holding Chief Officer's License, unlimited, and Masters & Pilots License for San Francisco Bay and inland waters, while maneuvering in the channel basin near the northeast fender of the Third Street and Channel Bridge in the City and County of San Francisco, through failure of her engines to go in reverse, struck the extreme northeast pile supporting the corner of the timber wharf of the San Francisco Board of Harbor Commissioners, attached to the Third Street Bridge, severely fracturing the pile, breaking the fence on the timber wharf, causing a fracture in the cement walk running parallel to the timber wharf, which walk was owned by the plaintiff, and also damaging the fender piling of the plaintiff situate adjacent to and south of the timber wharf. There was a demarkation between the fender piling and the timber wharf of approximately three inches. The striking of the tug against the piling of the wharf caused the contact of the piling with the fender pilings, which resulted in the damaged complained of. The pictures of the fractured pile and of the fender piling were introduced in evidence, together with correspondence between the plaintiff and defendant, as well as oral conversation between their representatives disclosing that the defendant was given ample opportunity to have a representative make a joint survey of the damage claimed by the plaintiff. The defendant failed to designate any representative to make such survey and requested the plaintiff to execute and forward a claim form together with the cost of repairs. Plans and specifications for the repair of the damage were timely forwarded to the defendant. Thereafter, and in December 1945, the plaintiff advertised for bids for the repairs according to the plans and specifications, and duly let out the contract for the repairs to Healy Tibbitts Construction Company for the total sum of $3,740.-00. The cost to the plaintiff for inspection amounted to $130.50, making the total cost of the new construction $3,870.50.

At the inception of the trial defendant made a motion to dismiss for lack of jurisdiction on the ground that plaintiff had failed to allege in the complaint that the bridge structure and fender were constructed and maintained pursuant to plans approved by the Secretary of War and the Chief of Engineers. This motion was denied on the authority of the case of Pacific Spruce Corporation v. City and County of San Francisco, 9 Cir., 72 F.2d 712.

At the trial the defendant admitted that the cost of the work performed under the contract was reasonable, the defendant contending, however, that the evidence not disclosing the exact date of when the fender piling was originally constructed, and that from the evidence, it was apparent that the fender piling was old and had seen many years of service. From the evidence it appeared to the Court that the fender piling had been in service prior to the accident for a good number of years and that fifteen years of service is a fair estimate of the time of their service.

The contract between the plaintiff and the State Board of Harbor Commissioners for the construction and maintenance of the Third Street Bridge was admitted by the defendant as having been duly executed. From such contract and from the evidence of the uses of the bridge and exercise of ownership of the fender piling from the time of construction, the Court is convinced that the plaintiff has shown a sufficient right, title and owner-

ship to maintain this action for damages. The Court is also convinced from the evidence that the collision of the defendant's tug with the piling caused the damage to the plaintiff's fender piling and was due to the negligence of the operators of the tug in the failure of the tug to reverse its engines in time to prevent the collision. The Court is also convinced that the fender piling was not in fact an unlawful obstruction for which the defendant could be absolved from liability for its negligence.

I am convinced that the plaintiff has shown a sufficient right and title and ownership to maintain the action for damages before the Court. It has suffered injury by reason of the collision; that the Government is liable in damages by reason of negligent operation of imperfect machinery; and from here on, the Court is required to perform the services that a jury normally would perform on reaching a finding of the extent of damages the plaintiff is entitled to.

I have gone fairly carefully over the record and my notes of the evidence at different places. The costs of the replacement claimed and shown by the evidence were $3,807.50, and these replacements were made necessary by reason of the collision. The materials replaced had been in service about fifteen years. I am not quite certain as to the exact time, but fifteen years is a fair figure, I believe. The evidence of probable lifetime of such materials as in the injured structure brought —that is, the evidence brought divergent opinions, varying from five to thirty years.

Now, taking into consideration all the surrounding conditions testified to by different witnesses, it is my opinion that twenty-five years is the fair and reasonable life value to allot to the materials in the structure which was replaced, and that would give a life remainder to the materials that were there before the collision, of ten years.

Now, it is my view that the plaintiff is not entitled to have a new structure in substitution of one that had served fifteen years and has a remaining life of only ten years. The new materials put in place were in all respects equal in quality to the materials removed, and met the design specifications of the plaintiff. They should, in my view of the facts, last in place fifteen years longer than the materials that were removed. This extension of life service should have given a value of three-fifths of present costs or $2,322.30, less the interest value on the outlay of $3,870.-50.

There was no evidence given as to the interest costs of money by the plaintiff at the time of the outlay, or at the present time. However, I believe that the Court can take judicial notice from generally public information, that the City and County of San Francisco's outstanding bond issues, upon which it is obliged to pay interest, ranges from something more than five per cent down to one and a quarter per centum, on short term loans. In the absence of any direct evidence, the Court estimates that a fair average rate for the purpose of the matter at hand to be three per cent.

Then, summarizing, the cost of replacement was $3.870.50. Taking fifteen years depreciation from that, on the old structure,—assuming the same cost— would amount to $2,322.30, making a value of the demolished structure $1,548.20, plus interest cost on the replaced cost of $3,870.50, at three per cent per annum for ten years— that is, its unused remaining lifetime. That interest cost amounts to $1,151.50, at the rate computed, which, added to the $1,-548.20 value given to the structure before the collision, makes a total of $2,699.35. That is my view and judgment and order as to the judgment to be entered.

Now, of course, both parties may reserve exceptions; and the plaintiff, having prevailed—although not to the extent of its claims—I will ask the plaintiff to prepare the findings and conclusion, and would like to have it before me by the beginning of next week, that is, Monday, before noon, if possible; and if the defendant wishes to ask for any particular findings, I will, of course, be glad to consider them.