**WEST MICHIGAN DOCK & MARKET CORPORATION, a Michigan Corporation, Plaintiff,**

v.

**The S. S. FLYING INDEPENDENT, her Engines, Boilers, etc., and American Export and Isbrantsen Lines, a New York Corporation, Defendants.**

No. 24718.

United States District Court
E. D. Michigan, S. D.

March 4, 1968.

Foster, Meadows & Ballard, Detroit, Mich., for plaintiff.

Scholl, Jenkins, Robinson & Stieg, Detroit, Mich., Bradley, Eaton, Jackman & McGovern, Chicago, Ill., for defendants.

KEITH, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This suit in admiralty having been heard in the regular course before the Court without a jury, oral arguments having been made by counsel and the Court having considered the testimony, the oral arguments and briefs filed by the parties and being fully advised in the premises. The Court hereby makes the following findings of facts and conclusions of law:

### FINDINGS OF FACT

(1) Plaintiff, West Michigan Dock & Market Corporation, at all material times was the owner of a dock located on the south shore of Muskegon Lake at Muskegon, Michigan, between 4th and 6th Streets and about 4½ miles from the entrance to Lake Muskegon from Lake Michigan.

(2) Defendant, American Export Isbrantsen Lines, Inc., a New York Corporation, at all times hereto was the owner and operator of the S.S. Flying Independent.

(3) West Michigan Dock and Market Corporation constructed its dock in 1933 pursuant to permit No. 46–G–33 issued by the Secretary of War on May 18, 1933, pursuant to the Rivers and Harbors Act of 1899, as amended, 33 U.S.C. § 403, and as originally constructed, had a 12″ x 12″ wooden fender at the top of the steel sheet piling.

(4) That in 1952 the 12″ x 12″ wooden fender, due to wear and tear was removed and replaced with a steel fender that is 9″ x 5″ and which is installed approximately nine inches from the top of the steel sheet piling (Exhibit P–9).

(5) The plaintiff made no application of the U. S. Corps of Engineers before the wooden fender was replaced by the steel fender, and due to the fact that the change was immaterial and less of an obstruction to navigation than the wooden fender, no approval was required from the U. S. Corps of Engineers.

(6) In the Spring of 1963, the dock was inspected and approved by the U. S. Army to handle Military Cargo over said dock.

(7) That on or about July 16, 1963, the S.S. Flying Independent moored port side to Berth No. 3 at said dock to load military cargo.

(8) When the S.S. Flying Independent berthed at said dock, the Captain or Master of the S.S. Flying Independent knew or should have known that the dock had a steel fender as described above and did not have a 12″ x 12″ wooden fender.

(9) On July 17, 1963, at approximately 2:35 P.M., the S.S. Flying Independent was partially laden with cargo and was preparing to depart plaintiff's dock. The vessel was lying port side to the dock heading south. After her lines were taken in the vessel backed to the north for about 400 feet until her stern passed some distance beyond the northern end of Berth No. 4 partly into Muskegon Lake. The vessel then stopped and proceeded ahead with her bow moving to Starboard. In accomplishing this maneuver, the tips of the propeller blades struck the dock below water causing damage which is the subject of this suit.

(10) One of the witnesses on the dock hollered up to the Captain of the S.S. Flying Independent that the stern had struck the dock. The master of the S.S. Flying Independent hollered down to the persons on the dock that the vessel had failed to swing around or words to that effect and then continued on its voyage without stopping to investigate the extent of damages to the dock, and the extent of damages, if any, to the S.S. Flying Independent.

(11) The plaintiff promptly notified defendant of the damage caused by the S.S. Flying Independent, and said damage was examined by the defendant's surveyor. The plaintiff awarded a contract for the repairs to the dock for the price of $27,800.00. In addition, the plaintiff retained the services of a consulting engineer at the cost of $100. The total cost of repairs and expenses incurred was $27,900.00, and it was stipulated that this was a fair and reasonable figure for the work required to be done. There was no improvement to the dock as a result of the repairs.

(12) The evidence is uncontradicted that in departing said dock the S.S. Flying Independent failed to back far enough out into the lake before stopping and proceeding ahead, and that the maneuvers of the S.S. Flying Independent were improper resulting in the propeller striking the dock as the S.S. Flying Independent proceeded ahead swinging to the right.

(13) Shore witnesses, Rainboldt, McCrea and Nord testified that the bow of the S.S. Flying Independent was swinging out into the Lake and the stern into the dock at the time the propeller damaged the dock. Exhibits "P–8", "D–10", "P–11" and "P–12" prepared by these witnesses showed that the S.S. Flying Independent was at an angle of 25° to 45° to the dock at the time of the propeller damage.

(14) The preponderance of the evidence indicates and the Court finds that a 12″ x 12″ wooden timber at the top of the sheet steel piling dock would not have prevented the damage caused by the S.S. Flying Independent's propeller in the manner which the vessel was being navigated as said vessel departed the dock on July 17, 1963.

## CONCLUSIONS OF LAW

■ The damages suffered by plaintiff as a result of the striking of its dock by a vessel owned and operated by the defendant is within the admiralty and maritime jurisdiction of the Court.

■■ The change in the plaintiff's dock from a wooden fender system to a steel fender system was not a substantial or material change in the dock and did not violate the provisions of the statute under which the permit was issued and did not make the dock an illegal obstruction to navigation. Even if the dock was illegal, which it is not, the master or Captain of the S.S. Flying Independent knew or should have known of the fender system on the subject dock and navigated the vessel to avoid contact by the propeller of the vessel with said dock. Beaufort & Morehead Ry. Co. v. Tug Damyank, 122 F.Supp. 82 (E.D.N.C. 1954); Seaboard Airline R. Co. v. Pan American Petroleum & Transport Co., 199 F.2d 761 (5th Cir. 1952). Thus, the court finds that the change in the fender system on the dock was not a contributory cause to the striking of the dock by the S.S. Flying Independent and that the sole and proximate cause of the damage to the plaintiff's dock was the negligent and faulty navigation of the S.S. Flying Independent, and, accordingly, that the Admiralty Doctrine of divided damages does not apply to the instant case. Pacific Spruce Corporation v. City and County of San Francisco, 72 F.2d 712 (9th Cir. 1934).

It is stipulated that the plaintiff received no benefit and the useful life of the dock was not extended by the repairs to the dock and the plaintiff is entitled to recover the full amount of its damages.

The plaintiff is entitled to its damages of $27,900.00, plus interest at the rate of 6% per annum from the date of the payment of the repairs on September 4, 1963, to the date of judgment. The plaintiff's request for an award of attorney fees is hereby denied.

All requests for findings of fact submitted by the parties are denied insofar as they are inconsistent with this opinion. The facts contained in the Opinion constitute the findings of fact of the Court.

All Requests for Conclusions of Law which are inconsistent with the foregoing opinion are denied.